**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | |
|---|---|
| THOSE CHARACTERS FROM CLEVELAND, LLC, ) | |
| ) | Case No. 23-cv-15005 |
| Plaintiff, ) | |
| ) | Judge Lindsay C. Jenkins |
| v. ) | |
| ) | |
| THE INDIVIDUALS, CORPORATIONS, LIMITED ) | |
| LIABILITY COMPANIES, PARTNERSHIPS AND ) | |
| PARTNERSHIPS AND UNINCORPORATED ) | |
| ASSOCIATIONS IDENTIFIED ON SCHEDULE A ) | |
| HERETO, ) | |
| ) | |
| Defendants. ) | |

**MEMORANDUM IN SUPPORT OF PLAINTIFF'S *EX PARTE* MOTION FOR
ENTRY OF A TEMPORARY RESTRAINING ORDER, INCLUDING A TEMPORARY
INJUNCTION, A TEMPORARY ASSET RESTRAINT, EXPEDITED DISCOVERY, AND
<u>SERVICE OF PROCESS BY E-MAIL AND/OR ELECTRONIC PUBLICATION</u>**

Plaintiff, THOSE CHARACTERS FROM CLEVELAND, LLC, submits this Memorandum

in support of its *Ex Parte* Motion for Entry of a Temporary Restraining Order, including a temporary

injunction, a temporary asset restraint, expedited discovery, and service of process by email and/or

electronic publication (the "*Ex Parte* Motion").

# TABLE OF CONTENTS

I.   INTRODUCTION AND SUMMARY OF ARGUMENT ........................................................1

II.  STATEMENT OF FACTS.................................................................................................5

    A. PLAINTIFF'S TRADEMARKS, COPYRIGHTS AND PRODUCTS .........................................5

    B. DEFENDANTS' UNLAWFUL ACTIVITIES .....................................................................6

       i.   *Defendants Operate Legitimate-Looking Internet Stores*................................................7

       ii.  *Defendants Illegitimately Optimize the Defendants' Internet Stores for Search Engines* 7

       iii. *Defendants Use Fictitious Aliases and Common Tactics to Evade Shut  Down* .............8

III. ARGUMENT....................................................................................................................10

    A. THIS COURT MAY EXERCISE PERSONAL JURISDICTION OVER DEFENDANTS ...........................12

    B. STANDARD FOR TEMPORARY RESTRAINING ORDER AND PRELIMINARY INJUNCTION ............13

    C. PLAINTIFF WILL LIKELY SUCCEED ON THE MERITS ..............................................14

       i.   *Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim*14

       ii.  *Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim*.......................18

       iii. *Plaintiff Is Likely to Succeed on Its Copyright Infringement Claim*……………………18

       iv. *Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim*....................................................................................................................................19

    D. THERE IS NO ADEQUATE REMEDY AT LAW AND PLAINTIFF WILL SUFFER IRREPARABLE HARM IN THE ABSENCE OF PRELIMINARY RELIEF....................................................19

    E. THE BALANCING OF HARMS TIPS IN PLAINTIFF'S FAVOR ......................................21

    F. ISSUANCE OF THE INJUNCTION IS IN THE PUBLIC INTEREST.................................22

IV.  THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE.................................................23

    A. A TEMPORARY RESTRAINING ORDER IMMEDIATELY ENJOINING DEFENDANTS' UNAUTHORIZED AND UNLAWFUL USE OF PLAINTIFF'S MARKS IS APPROPRIATE ..................24

    B. TRANSFERRING THE DEFENDANT DOMAIN NAMES TO PLAINTIFF'S CONTROL IS  APPROPRIATE25

    C. PREVENTING THE FRAUDULENT TRANSFER OF ASSETS IS APPROPRIATE ..............................26

    D. PLAINTIFF IS ENTITLED TO EXPEDITED DISCOVERY .............................................28

V.   A BOND SHOULD SECURE THE INJUNCTIVE RELIEF...............................................29

VI.  CONCLUSION .................................................................................................................30

# TABLE OF AUTHORITIES

## <u>Cases</u>

*Abbott Labs. v. Mead Johnson & Co.,*
    971 F.2d 6, 11 (7th Cir. 1992) ............................................................................... 13

*Abercrombie & Fitch Trading Co. v. 4cheapbags.com,*
    No. 1:12-cv-21088 (S. D. Fla. April 4, 2012) (unpublished)............................ 3-4, 25, 30

*All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,*
    2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) .......................................................... 18

*Am. Broad. Co. v. Maljack Prods., Inc.,*
    34 F. Supp. 2d 665, 681 (N.D. Ill. 1998) ...................................................................... 19

*Animale Grp. Inc. v. Sunny's Perfume Inc.,*
    256 F. App'x 707, 709 (5th Cir. 2007) .......................................................................... 27

*Apple Computer, Inc. v. Franklin Computer Corp.,*
    714 F.2d 1240, 1255 (3rd Cir. 1983)……………………………………………………...22

*Beats Electronics, LLC v. The Partnerships, et al.,*
    No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished)........................................ 3, 24

*Board of Directors of Sapphire Bay Condos. W. v. Simpson,*
    129 F. App'x 711 (3d Cir. 2005) ................................................................................... 26

*Burger King Corp. v. Majeed,*
    805 F. Supp. 994, 1006 (S.D. Fla. 1992) ...................................................................... 21

*CAE, Inc. v. Clean Air Eng'g Inc.,*
    267 F.3d 660, 681 (7th Cir. 2001) ................................................................................. 16

*Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.,*
    No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) ........................................ 3, 24

*Chanel, Inc. v. Paley,*
    No. 3:09-cv04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) .............................. 26

*Charter Nat'l Bank & Trust v. Charter One Fin., Inc.,*
    No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001)............................. 13

*Chrome Hearts LLC v. The Partnerships, et al.,*
    No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) ......................................... 3, 24

*Coach, Inc., et al. v. Does 1-100,*

No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) .................................. 3, 25, 30

*Columbia Pictures Indus., Inc. v. Jasso*,
   927 F. Supp. 1075, 1077 (N.D. Ill. 1996) ...................................................... 11

*CSC Holdings, Inc. v. Redisi*,
   309 F.3d 988 (7th Cir. 2002) ...................................................................... 27

*Deckers Outdoor Corp. v. Does 1-1,281*,
   No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished).................................. 3, 25, 30

*Deckert v. Independence Shares Corp.*,
   311 U.S. 282 (1940)................................................................................. 27

*Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*,
   94 F.3d 376, 381 (7th Cir. 1996) ................................................................ 15

*Eli Lilly & Co. v. Natural Answers, Inc.*,
   233 F.3d 456, 461, 462, 469 (7th Cir. 2000) ........................................ 14, 15, 19, 22

*Ford Motor Co. v. Lapertosa*,
   126 F. Supp. 2d 463, 467 (E.D. Mich. 2001)............................................... 25, 26

*G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*,
   873 F.2d 985, 999 (7th Cir. 1989) .............................................................. 16

*Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis*,
   35 F.3d 1134, 1140 (7th Cir. 1994) ............................................................ 21

*Gillespie v. Civiletti*,
   629 F.2d 637, 642 (9th Cir. 1980) .............................................................. 28

*Grupo Mexicano de Desarollo, S.A. v. Alliance Bond Fund*,
   527 U.S. at 308 (1999)............................................................................. 27

*Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*,
   560 F.2d 1325, 1332 (7th Cir. 1977) ........................................................... 20

*Hoechst Diafoil Co. v. Nan Ya Plastics Corp.*,
   174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c) .................................. 29

*Ideal Indus., Inc. v. Gardner Bender, Inc.*,
   612 F.2d 1018, 1026 (7th Cir. 1979)…………………………………………………..20

*In re Vuitton et Fils, S.A.*,
   606 F.2d 1 (2d Cir. 1979)............................................................................ 4

*Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,*
    846 F.2d 1079, 1092 (7th Cir. 1988) ........................................................................ 20

*James Burrough Ltd. v. Sign of the Beefeater, Inc.,*
    540 F.2d 266, 274 (7th Cir. 1976) ............................................................................ 22

*Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,*
    188 F. 3d 427, 436 (7th Cir. 1999) .......................................................................... 18

*JCW Investments, Inc. v. Novelty, Inc.,*
482 F.3d 910, 914 (7th Cir. 2007)…………………………………………………………...18

*Kraft Food Holdings, Inc. v. Helm,*
    205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) .............................................................. 25

*Krause Int'l Inc. v. Reed Elsevier, Inc.,*
    866 F. Supp. 585, 587-88 (D.D.C. 1994)................................................................ 21

*Levi Strauss & Co. v. Sunrise Int'l Trading Inc.,*
    51 F.3d 982, 987 (11th Cir. 1995) ........................................................................... 27

*Libman Co. v. Vining Indus., Inc.,*
    69 F.3d 1360, 1363 (7th Cir.1995) .......................................................................... 17

*Lorillard Tobacco Co. v. Montrose Wholesale Candies,*
    2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005)................................................ 27

*Lululemon Athletica Canada Inc. v. The Partnerships, et al.,*
    No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished)....................................... 3, 24

*Luxottica USA LLC v. The Partnerships, et al.,*
    No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished)........................................ 3, 25

*Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,*
    929 F. Supp. 473, 478 (D.D.C. 1996). .................................................................... 21-22

*Manolo Blahnik Int'l Ltd. v. The Partnerships, et al.,*
    No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) ....................................... 3, 24

*Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,*
    128 F.3d 1111, 1114 (7th Cir. 1997) ....................................................................... 19

*MGM Studios, Inc. v. Grokster, Ltd.,*
    518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007)…………………………………………..20

*Michael Kors, L.L.C. v. The Partnerships and Unincorporated Associations Identified on Schedule*
    *"A",*

iv

No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished)................................................ 3, 24

*NBA Properties, Inc., et al. v. The Partnerships, et al.*,
No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) ............................................ 3, 24

*Neopost Industrie B.V. v. PFE Int'l Inc.*,
403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) ............................................................ 14, 18

*Oakley, Inc. v. Does 1-100*,
No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished)..................................... 3, 25, 30

*Oppenheimer Fund, Inc. v. Sanders*,
437 U.S. 340, 351, 98 S.Ct. 2380 (1978) ................................................................... 28

*Philip Morris U.S.A., Inc. v. Otamedia Ltd.*,
331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004)................................................................ 26

*Polaroid Corp. v. Polarad Electronics Corp.*,
287 F.2d 492, 495 (2d Cir. 1961).............................................................................. 15

*Polo Fashions, Inc. v. Craftex, Inc.*,
816 F.2d 145, 148 (4th Cir.1987) ............................................................................. 15

*Promatek Industries, Ltd. v. Equitrac Corp.*,
300 F.3d 808, 813 (7th Cir. 2002) ............................................................................ 21

*Purdue Research Found. v. Sanofi-Sythelabo, S.A.*,
338 F.3d 773, 782 (7th Cir. 2003) ............................................................................ 12

*Rathmann Grp. v. Tanenbaum*,
889 F.2d 787, 789 (8th Cir. 1989) ............................................................................ 29

*Re/Max N. Cent., Inc. v. Cook*,
272 F.3d 424, 432 (7th Cir. 2001) ............................................................................ 19

*Reebok Int'l Ltd. v. Marnatech Enters., Inc.*,
970 F.2d 552, 559 (9th Cir. 1992) ............................................................................ 27

*Sands, Taylor & Wood Co. v. Quaker Oats Co.*,
978 F.2d 947, 960 (7th Cir. 1992) ............................................................................ 17

*Shashi, Inc. v. Ramada Worldwide, Inc.*,
No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005)........................... 22

*Spex, Inc. v. Joy of Spex, Inc.*,
847 F. Supp. 567, 579 (N.D. Ill. 1994) .................................................................... 19

*Stahly, Inc. v. M.H. Jacobs Co.,*
  183 F.2d 914, 917 (7th Cir. 1950) ................................................................. 22

*Topps Co., Inc. v. Gerrit J. Verburg Co.,*
  41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ................................................. 15

*Tory Burch LLC v. Zhong Feng, et al.,*
  No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ................. 3, 25, 30

*Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,*
  No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) ............... 4, 25

*Trans Union LLC v. Credit Research, Inc.,*
  142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) ............................................... 16

*True Religion Apparel, Inc. v. Does 1-100,*
  No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ...................... 3, 25, 30

*Ty, Inc. v. Baby Me, Inc.,*
  2001 LEXIS 5761, 14 (N.D. Ill. 2001) ........................................................ 13

*Ty, Inc. v. The Jones Group, Inc.,*
  237 F.3d 891, 895 (7th Cir. 2001) ........................................................... 13, 21

*uBID, Inc. v. GoDaddy Group, Inc.*
  623 F.3d 421, 423 (7th Cir. 2010) ............................................................. 12

*Vance v. Rumsfeld,*
  No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) ......... 28

*Warner Bros. Entm't, Inc. v. X One X Prods.,*
  644 F.3d 584, 597 (8th Cir. 2011)………………………………………...19

*Wesley–Jessen Division of Schering Corp. v. Bausch & Lomb Inc.,*
  698 F.2d 862, 867 (7th Cir.1983) ........................................................... 19-20

## Statutes

15 U.S.C. § 1051 et seq. ............................................................................. 11

15 U.S.C. § 1057(b) ................................................................................ 6, 15

15 U.S.C. § 1114(1) ..................................................................................... 14

15 U.S.C. § 1116(a) ................................................................................ 4, 23

15 U.S.C. § 1117(a) ................................................................................................ 5

15 U.S.C. § 1117(a)(1) ........................................................................................... 27

15 U.S.C. § 1125(a) .............................................................................................. 18

15 U.S.C. § 1125(c)(1) ............................................................................................ 6

17 U.S.C. § 101………………………………………………………………...11, 18

17 U.S.C. § 501………………………………………………………………………18

28 U.S.C. § 1331 ................................................................................................... 11

28 U.S.C. § 1367(a) .............................................................................................. 11

28 U.S.C. § 1391 ................................................................................................... 11

28 U.S.C. §§ 1338(a)-(b) ...................................................................................... 11

735 ILCS 5/2-209(a)(2)………………………………………………………...12

Fed. R. Civ. P. 26(b)(2) ........................................................................................ 28

Fed. R. Civ. P. 65 ................................................................................................. 23

Fed. R. Civ. P. 65(c)………………………………………………………………29

Fed. R. Civ. P. 65(b) ...................................................................................... 10, 23

Fed. R. Civ. P. 65(d)(2)(C) ........................................................................ 5, 23, 29

Fed. R. Civ. P.65(b)(1) ......................................................................................... 21

## Other Authorities

*4 Callmann on Unfair Competition, Trademark and Monopolies*
    § 88.3(b) at 205 (3d ed. 1970)...........................................................................20

J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition*
    § 30:40 (4th ed. 2013).........................................................................................28

## MEMORANDUM OF LAW

## I.    INTRODUCTION AND SUMMARY OF ARGUMENT

Plaintiff brings this action against the defendants identified in Schedule A to the Complaint (collectively, the "Defendants") for federal trademark infringement and counterfeiting (Count I), false designation of origin (Count II), copyright infringement (Count III), and violation of the Illinois Uniform Deceptive Trade Practices Act (Count IV). As alleged in the Complaint, Defendants are promoting, advertising, marketing, distributing, offering for sale, and selling counterfeit products in connection with Plaintiff's federally registered trademarks, Reg. Nos. 4,7875,19; 5,8749,43; 3,336,078; 4,602,800; 1,270,509; 1,773,296; 3,767,824; 1,773,296; 1,294,343 and 1,780,477 and U.S. Copyright Reg. Nos. VA 1-824-810 and VA 1-982-408. (collectively, the "Counterfeit CARE BEARS Products"), through various fully interactive commercial Internet websites operating under at least the Defendant Domain Names and Online Marketplace Accounts listed in Schedule A to the Complaint (collectively, the "Defendant Internet Stores"). In short, Defendants run a counterfeiting operation with disregard for anything except generating profits.

The Defendants create numerous Defendant Internet Stores with an intent to have them appear to be selling genuine products, while actually selling unauthorized and unlicensed Counterfeit CARE BEARS Products to unknowing consumers. The Defendant Internet Stores share unique identifiers, such as design elements and similarities of the counterfeit products offered for sale, establishing a logical relationship between them and suggesting that Defendants' counterfeiting operation arises out of the same transaction, occurrence, or series of transactions or occurrences. Defendants attempt to avoid liability by concealing both their identities and the full scope and interworking of their counterfeiting operation. Plaintiff has filed this action to

1

combat Defendants' infringement and counterfeiting of Plaintiff's registered trademarks and copyrights, as well as to protect unknowing consumers from purchasing Counterfeit CARE BEARS Products over the Internet.

This Court has personal jurisdiction over Defendants because each Defendant targets Illinois residents and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit CARE BEARS Products to consumers within the United States, including the State of Illinois. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Internet Stores through which Illinois residents can purchase products being sold in connection with Plaintiff's CARE BEARS Trademarks and Copyrights. Defendants directly target unlawful business activities toward consumers in Illinois, cause harm to Plaintiff's business within this Judicial District, and have caused and will continue to cause irreparable injury to Plaintiff. Defendants deceive the public by trading upon Plaintiff's reputation and goodwill by using their commercial, interactive Internet Stores to sell and/or offer for sale unlicensed Counterfeit CARE BEARS Products in connection with Plaintiff's Trademarks and Copyrights.

Defendants' ongoing unlawful activities should be restrained, and Plaintiff respectfully requests that this Court issue an *ex parte* a Temporary Restraining Order. Specifically, Plaintiff seeks an order: (1) temporarily restraining Defendants' continued manufacture, importation, distribution, offering for sale, and sale of Counterfeit CARE BEARS Products; (2) temporarily transferring the Defendant Domain Names to Plaintiff so that the continued use of the domains in carrying out acts of infringement can be temporarily disabled; and (3) temporarily restraining Defendants' assets to preserve Plaintiff's right to an equitable accounting. Ancillary to and as part of the TRO, Plaintiff respectfully requests that this Court (4) authorize expedited discovery

allowing Plaintiff to inspect and copy Defendants' records relating to the manufacture, distribution, offering for sale, and sale of Counterfeit CARE BEARS Products and Defendants' financial accounts; and (5) authorize service by electronic mail and/or electronic publication at the Defendant Domain Names.

In light of the covert nature of offshore counterfeiting activities and the vital need to establish an economic disincentive for trademark infringement, courts regularly issue such orders. *See, e.g., Michael Kors, L.L.C. v. The Partnerships, et al.*, No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) (Granting *ex parte* Temporary Restraining Order); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik Int'l Ltd. v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, et al.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.,* No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same); *Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished) (same); *Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (same); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) (same); *Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla.

June 6, 2012) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same)*; see also, In re Vuitton et Fils, S.A.,* 606 F.2d 1 (2d Cir. 1979) (holding that ex parte temporary restraining orders are indispensable to the commencement of an action when they are the sole method of preserving a state of affairs in which the court can provide effective final relief).

Plaintiff's well-pleaded factual allegations, which must be accepted as true, and evidence submitted through declarations, establishes that issuing a temporary restraining order against Defendants is necessary and proper. Plaintiff can demonstrate a strong likelihood of success on the merits. Plaintiff is the owner of trademark registration Nos. 4,7875,19; 5,8749,43; 3,336,078; 4,602,800; 1,270,509; 1,773,296; 3,767,824; 1,773,296; 1,294,343 and 1,780,477 and U.S. Copyright Reg. Nos. VA 1-824-810 and VA 1-982-408. Defendants' use of Plaintiff's trademarks and copyrights to sell Counterfeit CARE BEARS Products is causing consumer confusion.

In addition, Defendants have and continue to irreparably harm Plaintiff through diminished goodwill and damage to Plaintiff's reputation. Monetary damages are inadequate to Plaintiff for these damages. This makes injunctive relief particularly appropriate in this matter.

Issuance of an injunction is also in the public interest because it will prevent confusion among the public and prevent unknowing consumers from being deceived into purchasing Counterfeit CARE BEARS Products.

In addition, an order authorizing the transfer of the Defendant Domain Names to Plaintiff's control so that the continued use of the domains in carrying out acts of infringement can be temporarily disabled is warranted pursuant to 15 U.S.C. § 1116(a) which authorizes this Court "to grant injunctions … to prevent the violation of any right of the registrant of a mark…."

Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Similarly, a prejudgment asset freeze is also proper since Plaintiff seeks an equitable remedy in the accounting of Defendants' profits pursuant to 15 U.S.C. § 1117(a). Finally, an order authorizing service of process by email and/or electronic publication is proper since as a result of Defendants' intentional efforts to conceal their identities and operate their business online. Serving Defendants electronically is the best method for notifying them of this action and providing them the opportunity to defend and present their objections.

## II.  STATEMENT OF FACTS

### A. Plaintiff's Trademarks, Copyrights and Products

Plaintiff is in the business of developing, marketing, selling and distributing the CARE BEARS brand of products. *See* Declaration of Sean Gorman (the "Gorman Declaration") at ¶¶ 3-4. Plaintiff has expended substantial time, money and other resources promoting the CARE BEARS brand products. *Id.* at ¶11.

Plaintiff is the owner of the CARE BEARS Trademarks and Copyrights. *Id.* at ¶5. The U.S. registrations for the CARE BEARS Trademarks are valid, subsisting, and in full force and effect. *Id.* at ¶ 7. True and correct copies of the federal trademark registration certificates for the CARE BEARS Trademarks are attached to the Gorman Declaration as Exhibit 1 and the federal Copyright Registrations for the CARE BEARS copyrights are attached to the Gorman Declaration as Exhibit 2.

The CARE BEARS Trademarks and Copyrights are distinctive and identify the merchandise as goods from Plaintiff. *Id.* at ¶ 8. The registrations for the CARE BEARS Trademarks

and Copyrights constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the CARE BEARS Trademarks pursuant to 15 U.S.C. § 1057(b) and as to use the CARE BEARS Copyrights. The CARE BEARS Trademarks qualify as famous marks, as that term is used in 15 U.S.C. § 1125(c)(1), and have been continuously used and never abandoned. *Id.* at ¶ 9. Plaintiff has expended substantial time, money, and other resources in developing, advertising, and otherwise promoting the CARE BEARS Trademarks and Copyrights. *Id*. at 11. As a result, products bearing the CARE BEARS Trademarks and Copyrights are widely recognized and exclusively associated by consumers, the public, and the trade as being products sourced from Plaintiff. *Id.*

### B. Defendants' Unlawful Activities

The success of the CARE BEARS brand has resulted in those products being counterfeited. *Id. at* ¶ 12. Plaintiff has identified numerous domain names linked to fully interactive websites and marketplace listings on platforms such as iOffer, eBay, Etsy, Amazon, Walmart and Temu, including the Defendants Internet Stores, which were offering for sale, selling, and importing Counterfeit CARE BEARS Products to consumers in this Judicial District and throughout the United States. *Id.* Internet websites like the Defendants Internet Stores are estimated to receive tens of millions of visits per year and to generate over $135 billion in annual online sales. Declaration of Michael A. Hierl (the "Hierl" Declaration) at ¶ 2. According to an intellectual property rights seizures statistics reports issued by Homeland Security, the manufacturer's suggested retail price (MSRP) of goods seized by the U.S. government during 2017 exceeded $1.2 billion. *Id.* at ¶ 3. Internet websites like the Defendants Internet Stores are also estimated to contribute to tens of thousands of lost jobs for legitimate businesses and broader economic damages such as lost tax revenue every year. *Id.* at ¶ 4.

i.   Defendants Operate Legitimate-Looking Internet Stores

Upon information and belief, Defendants facilitate sales by designing the Defendants Internet Stores so that they appear to unknowing consumers to be authorized online retailers, outlet stores, or wholesalers selling genuine CARE BEARS Products. Gorman Declaration at ¶ 14. Many of the Defendants Internet Stores look sophisticated and accept payment in U.S. dollars via credit cards and eBay, Etsy, Amazon, Walmart and Temu. *Id.* Defendants Internet Stores often include images and design elements that make it very difficult for consumers to distinguish such counterfeit sites from an authorized website. *Id.* Defendants further perpetuate the illusion of legitimacy by offering "live 24/7" customer service and using indicia of authenticity and security that consumers have come to associate with authorized retailers, including the McAfee® Security, VeriSign®, Visa®, MasterCard®, and eBay, Etsy, Amazon, Walmart and Temu logos. *Id.* Plaintiff has not licensed or authorized Defendants to use its CARE BEARS Trademarks or Copyrights, and none of the Defendants are authorized retailers of genuine CARE BEARS Products. *Id.*

ii.   Defendants Illegitimately Optimize the Defendants' Internet Stores for Search Engines

Upon information and belief, Defendants also deceive unknowing consumers by using the CARE BEARS Trademarks and Copyrights without authorization within the content, text, and/or meta tags of their websites in order to attract various search engines crawling the Internet looking for websites relevant to consumer searches for CARE BEARS Products. *Id.* at ¶ 15. Additionally, upon information and belief, Defendants use other unauthorized search engine optimization (SEO) tactics and social media spamming so that the Defendants Internet Stores listings show up at or near the top of relevant search results and misdirect consumers searching for genuine CARE BEARS Products. *Id.* Further, Defendants utilize similar illegitimate SEO

tactics to propel new domain names to the top of search results after others are shut down. *Id.* As such, Plaintiff also seeks to disable Defendants Domain Names owned by Defendants that are the means by which the Defendants could continue to sell Counterfeit CARE BEARS Products.

### iii. Defendants Use Fictitious Aliases and Common Tactics to Evade Shut Down

Defendants go to great lengths to conceal their identities and often use multiple fictitious names and addresses to register and operate their network of Defendants Internet Stores. *Id.* at ¶ 16. For example, many of Defendants' names and physical addresses used to register the Defendants Domain Names are incomplete, contain randomly typed letters, or fail to include cities or states. Other Defendants Domain Names use privacy services that conceal the owners' identity and contact information. *Id. at* ¶16. Upon information and belief, Defendants regularly create new websites and online marketplace accounts on various platforms using the identities listed in Schedule A to the Complaint, as well as other unknown fictitious names and addresses. *Id.* Such Defendants Internet Store registration patterns are one of many common tactics used by the Defendants to conceal their identities, the full scope and interworking of their counterfeiting operation, and to avoid being shut down. *Id.*

Even though Defendants operate under multiple fictitious names, there are numerous similarities among the Defendants Internet Stores. *Id.* at ¶ 17. For example, many of the Defendants websites have virtually identical layouts, even though different aliases were used to register the respective domain names. In addition, Counterfeit CARE BEARS Products for sale in the Defendants Internet Stores bear similar indicia of being counterfeit to one another, suggesting that the Counterfeit CARE BEARS Products were manufactured by and come from a common source and that, upon information and belief, Defendants are interrelated. *Id.* The Defendants Internet Stores also include other notable common features, including use of the same domain name registration patterns, unique shopping cart platforms, accepted payment

methods, check-out methods, meta data, illegitimate SEO tactics, HTML user-defined variables, domain redirection, lack of contact information, identically or similarly priced items and volume sales discounts, the same incorrect grammar and misspellings, similar hosting services, similar name servers, and the use of the same text and images. *Id.*

In addition to operating under multiple fictitious names, Defendants in this case and defendants in other similar cases against online counterfeiters use a variety of other common tactics to evade enforcement efforts. *Id.* at ¶ 18.  For example, counterfeiters like Defendants will often register new domain names or online marketplace accounts under new aliases once they receive notice of a lawsuit. *Id.* Counterfeiters also often move website hosting to rogue servers located outside the United States once notice of a lawsuit is received. Rogue servers are notorious for ignoring take down demands sent by brand owners. *Id.* Counterfeiters also typically ship products in small quantities via international mail to minimize detection by U.S. Customs and Border Protection. *Id.* A 2017 Homeland Security report on seizure statistics indicated that the Internet has fueled a "sharp increase" in the number of small packages of counterfeit goods shipped through the mail and express carriers. Hierl Declaration at ¶ 3.

Further, counterfeiters such as Defendants typically operate multiple credit card merchant accounts and eBay, Etsy, Amazon, Walmart and Temu accounts behind layers of payment gateways so that they can continue operation. Gorman Declaration at ¶ 19.  Upon information and belief, Defendants maintain off-shore bank accounts and regularly move funds from their accounts to off-shore bank accounts outside the jurisdiction of this Court. *Id*. *See also,* Hierl Declaration at ¶ 7. Indeed, analysis of transaction logs from similar cases brought by other trademark owners indicates that off-shore counterfeiters regularly move funds from their U.S. accounts to China-based bank accounts outside the jurisdiction of this Court. Hierl Declaration at ¶ 9.

Plaintiff's well-pleaded allegations regarding registration patterns, similarities among the Defendants Internet Stores and the Counterfeit CARE BEARS Products for sale thereon, and common tactics employed to evade enforcement establish a logical relationship among the Defendants suggesting that Defendants are an interrelated group of counterfeiters. Upon information and belief, Defendants are working in active concert to knowingly and willfully manufacture, import, distribute, offer for sale, and sell products in connection with counterfeit versions of the CARE BEARS Trademarks and Copyrights in the same transaction, occurrence, or series of transactions or occurrences. As indicated above, the tactics used by Defendants to conceal their identities and the full scope of their counterfeiting operation make it virtually impossible for Plaintiff to discover the true identities of the Defendants, the exact interworking of the Defendants' counterfeit network, and the relationship among Defendants. In the event that Defendants provide additional credible information regarding their identities, Plaintiff will take appropriate steps to amend the Complaint.

## III. ARGUMENT

Defendants' purposeful, intentional, and unlawful conduct is causing and will continue to cause irreparable harm to Plaintiff's reputation and the goodwill symbolized by the CARE BEARS Trademarks and Copyrights. To stop Defendants' sale of Counterfeit CARE BEARS Products, Plaintiff respectfully requests that this Court issue a temporary restraining order ordering, among other things, the transfer of the Defendants Domain Names to Plaintiff to redirect to a website providing notice of these proceedings and the freezing of Defendants' assets. Without the relief requested by Plaintiff's instant Motion, Defendants' unlawful activity will continue unabated, and Plaintiff and consumers will suffer irreparable harm.

Rule 65(b) of the Federal Rules of Civil Procedure provides that the Court may issue an *ex parte* temporary restraining order where immediate and irreparable injury, loss, or damage

will result to the applicant before the adverse party or that party's attorney can be heard in opposition. Fed. R. Civ. P. 65(b). The Defendants here fraudulently promote, advertise, offer to sell, and sell goods in connection with counterfeits of the CARE BEARS Trademarks and Copyrights via the Defendants Internet Stores. Defendants are creating a false association in the minds of consumers between the Defendants and Plaintiff by deceiving consumers into believing that the Counterfeit CARE BEARS Products for sale on Defendants' websites are sponsored or endorsed by Plaintiff. The entry of a temporary restraining order is appropriate because it would immediately stop the Defendants from benefiting from their wrongful use of the CARE BEARS Trademarks and Copyrights and preserve the status quo until such time as a hearing can be held.

In the absence of a temporary restraining order without notice, the Defendants can and likely will modify registration data and content, change hosts, redirect traffic to other websites in their control, and move any assets from U.S.-based bank accounts, including eBay, Etsy, Amazon, Walmart and Temu accounts. Courts have recognized that civil actions against counterfeiters present special challenges that justify proceeding on an *ex parte* basis. S*ee Columbia Pictures Indus., Inc. v. Jasso*, 927 F. Supp. 1075, 1077 (N.D. Ill. 1996) (observing that "proceedings against those who deliberately traffic in infringing merchandise are often useless if notice is given to the infringers"). As such, Plaintiff respectfully requests that this Court issue the requested *ex parte* temporary restraining order. This Court has original subject matter jurisdiction over the claims in this action pursuant to the provisions of the Lanham Act, 15 U.S.C. § 1051 et seq., 28 U.S.C. §§ 1338(a)-(b), and 28 U.S.C. § 1331 and the Copyright Act, 17 U.S.C. § 101 et seq. This Court has jurisdiction over the claims in this action that arise under the laws of the State of Illinois pursuant to 28 U.S.C. § 1367(a), because the state law claims are so related to the federal claims that they form part of the same case or controversy and derive from a common nucleus of operative facts. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

**A. This Court May Exercise Personal Jurisdiction over Defendants**

This Court may properly exercise personal jurisdiction over Defendants since Defendants directly target business activities toward consumers in the United States, including Illinois, by directly offering for sale products into this Judicial District as well as through at least the fully interactive, commercial Defendant Internet Stores. Specifically, Defendants are reaching out to do business with Illinois residents by operating one or more commercial, interactive Defendants Internet Stores through which Illinois residents can purchase products bearing counterfeit versions of the CARE BEARS Trademarks and Copyrights. Each Defendant has targeted sales from Illinois residents by operating online stores that offer shipping to the United States, including Illinois, and has offered to sell, and on information and belief, has sold and continues to sell Counterfeit CARE BEARS Products to consumers within the United States, including the State of Illinois. *See* Complaint at ¶¶ 2, 20 and 21. Without the benefit of an evidentiary hearing, plaintiff bears only the burden of making a prima facie case for personal jurisdiction; all of Plaintiff's asserted facts should be accepted as true and any factual determinations should be resolved in its favor. *See uBID, Inc. v. GoDaddy Group, Inc.* 623 F.3d 421, 423 (7th Cir. 2010); *see also*, *Purdue Research Found. v. Sanofi-Sythelabo, S.A.*, 338 F.3d 773, 782 (7th Cir. 2003) ("When determining whether a plaintiff has met his burden, jurisdictional allegations pleaded in the complaint are accepted as true unless proved otherwise by defendants' affidavits or exhibits.").

Illinois courts regularly exercise personal jurisdiction over websites using registered trademark without authorization in connection with the offering for sale and selling of infringing and counterfeit merchandise to Illinois residents over the Internet. 735 ILCS 5/2-209(a)(2). *See, e.g., Christian Dior Couture, S.A. v. Liu*, 2015 U.S. Dist. LEXIS 158225 (N.D. Ill. Nov. 17, 2015); *Monster Energy Co. v. Chen Wensheng*, 2015 U.S. Dist. LEXIS 132283 (N.D. Ill. Sept.

29, 2015); *Chrome Hearts LLC v. P'ships & Unincorporated Assns. Identified on Schedule "A"*, 2015 U.S. Dist. LEXIS 120232 (N.D. Ill. Sept. 9, 2015).

Through at least the fully interactive commercial Internet websites operating under the Defendant Domain Names and the marketplace listings operated using the Online Marketplace Accounts, each of the Defendants have targeted sales from Illinois residents by offering shipping to the United States, including Illinois, and, on information and belief, has sold or offered to sell Counterfeit CARE BEARS Products to residents of the United States, including Illinois. Each of the Defendants are committing tortious acts in Illinois, engaging in interstate commerce, and have wrongfully caused Plaintiff substantial injury in the State of Illinois.

**B. Standard for Temporary Restraining Order and Preliminary Injunction**

District Courts within this Circuit hold that the standard for granting a temporary restraining order and the standard for granting a preliminary injunction are identical. *See, e.g. Charter Nat'l Bank & Trust v. Charter One Fin., Inc.*, No. 1:01-cv-00905, 2001 WL 527404, *1 (N.D. Ill. May 15, 2001) (citation omitted). A party seeking to obtain a preliminary injunction must demonstrate: (1) that its case has some likelihood of success on the merits; (2) that no adequate remedy at law exists; and (3) that it will suffer irreparable harm if the injunction is not granted. *See Ty, Inc. v. The Jones Group, Inc.*, 237 F.3d 891, 895 (7th Cir. 2001).

If the Court is satisfied that these three conditions have been met, then it must consider the harm that the nonmoving party will suffer if preliminary relief is granted, balancing such harm against the irreparable harm the moving party will suffer if relief is denied. *Id.* Finally, the Court must consider the potential effect on the public interest (non-parties) in denying or granting the injunction. *Id.* The Court then weighs all of these factors, "sitting as would a chancellor in equity," when it decides whether to grant the injunction. *Id.* (quoting *Abbott Labs. v. Mead Johnson & Co.,* 971 F.2d 6, 11 (7th Cir. 1992)). This process involves engaging in what

the Court has deemed "the sliding scale approach" – the more likely the plaintiff will succeed on the merits, the less the balance of harms need favor the plaintiff's position. *Id.* The sliding scale approach is not mathematical in nature, rather "it is more properly characterized as subjective and intuitive, one which permits district courts to weigh the competing considerations and mold appropriate relief." *Id.* at 895-896. The greater the movant's likelihood of succeeding on the merits, the less the balancing of harms need be in his favor. *See Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 461 (7th Cir. 2000).

### C. Plaintiff Will Likely Succeed on the Merits

i. <u>Plaintiff Will Likely Succeed on Its Trademark Infringement and Counterfeiting Claim</u>

A defendant is liable for trademark infringement and counterfeiting under the Lanham Act if it, "without the consent of the registrant, uses in commerce any reproduction, copy, or colorable imitation of a registered mark in connection with the sale, offering for sale, distribution, or advertising of any goods … which such use[s] is likely to cause confusion, or to cause mistake, or to deceive." 15 U.S.C. § 1114(1). To prove a *prima facie* case of infringement, a plaintiff must show (1) its mark is distinctive enough to be worthy of protection; (2) Defendants are not authorized to use the trademark; and (3) Defendants' use of the trademark causes a likelihood of confusion as to the origin or sponsorship of Defendants' products. *See Neopost Industrie B.V. v. PFE Int'l Inc.,* 403 F. Supp. 2d 669, 684 (N.D. Ill. 2005) (citation omitted). Plaintiff satisfies all three requirements of the Lanham Act to successfully bring a trademark infringement and counterfeiting claim.

Regarding the first two elements, Plaintiff's CARE BEARS Trademarks are inherently distinctive and are registered with the United States Patent and Trademark Office on the Principal Register. The CARE BEARS Trademarks has been continuously used. Gorman

Declaration at ¶¶ 7-9. The registrations for the CARE BEARS Trademarks are valid, subsisting, and in full force and effect. *Id*. at ¶ 7. The registrations for the CARE BEARS Trademarks constitute *prima facie* evidence of their validity and of Plaintiff's exclusive right to use the CARE BEARS Trademarks pursuant to 15 U.S.C. § 1057(b). Furthermore, Plaintiff has not licensed or authorized Defendants to use either of the CARE BEARS Trademarks, and none of the Defendants is an authorized retailer of genuine CARE BEARS Products. *Id.* at ¶ 14.

Plaintiff satisfies the third factor, as well. Some courts do not undertake a factor-by-factor analysis under *Polaroid Corp. v. Polarad Electronics Corp.,* 287 F.2d 492, 495 (2d Cir. 1961) because counterfeits, by their very nature, cause confusion. *See Topps Co., Inc. v. Gerrit J. Verburg Co.*, 41 U.S.P.Q.2d 1412, 1417 (S.D.N.Y.1996) ("Where the marks are identical, and the goods are also identical and directly competitive, the decision can be made directly without a more formal and complete discussion of all of the Polaroid factors."); *Polo Fashions, Inc. v. Craftex, Inc.*, 816 F.2d 145, 148 (4th Cir.1987) ("Where, as here, one produces counterfeit goods in an apparent attempt to capitalize upon the popularity of, and demand for, another's product, there is a presumption of a likelihood of confusion.").

The Seventh Circuit, however, has enumerated seven factors to determine whether there is a likelihood of confusion: (1) similarity between the marks in appearance and suggestion; (2) similarity of the products; (3) area and manner of concurrent use; (4) degree of care likely to be exercised by consumers; (5) strength of complainant's mark; (6) actual confusion; and, (7) intent of the defendants to palm off their products as that of another. *Eli Lilly*, 233 F.3d at 461-462 (citation omitted). These factors are not a mechanical checklist, and "[t]he proper weight given to each of [the] factors will vary from case to case." *Dorr-Oliver, Inc. v. Fluid-Quip, Inc.*, 94 F.3d 376, 381 (7th Cir. 1996). At the same time, although no one factor is decisive, the similarity of

the marks, the intent of the defendant, and evidence of actual confusion are the most important considerations. *G. Heileman Brewing Co., Inc. v. Anheuser-Busch, Inc.*, 873 F.2d 985, 999 (7th Cir. 1989).

In this case, Plaintiff plainly satisfies the likelihood of confusion test. The Defendants are selling Counterfeit CARE BEARS Products using counterfeit marks identical to the CARE BEARS Trademarks. As such, the first and second likelihood of confusion factors weigh heavily in favor of Plaintiff.

Plaintiff also satisfies the third factor, namely, the area and manner of concurrent use. When considering the third factor, a court looks at "whether there is a relationship in use, promotion, distribution or sales between the goods or services of the parties." *CAE, Inc. v. Clean Air Eng'g Inc.,* 267 F.3d 660, 681 (7th Cir. 2001). A court also looks to whether the parties used the same channels of commerce, targeted the same general audience, and/or used similar marketing procedures. *Id*. Here, both Plaintiff and Defendants show the same products using the CARE BEARS Trademarks to the same consumers. See <u>Exhibit 3</u> to the Gorman Declaration. Thus, because Defendants target the same consumers as Plaintiff, this factor also weighs in favor of Plaintiff.

Regarding the fourth factor, degree of consumer care, potential consumers purchasing CARE BEARS Products are not restricted to a certain specialized, sophisticated group of people. Rather, the consumer base is a diverse group of people. "[W]hen a buyer class is mixed, the standard of care to be exercised by the reasonably prudent purchaser will be equal to that of the least sophisticated consumer in the class." *Trans Union LLC v. Credit Research, Inc.,* 142 F. Supp. 2d 1029, 1043 (N.D. Ill. 2001) (citation omitted). As such, CARE BEARS brand consumers are very likely to be confused, so this factor favors Plaintiff.

Due to their long-standing use and wide acceptance by the public, the CARE BEARS Trademarks have become famous and associated with high quality CARE BEARS Products. The CARE BEARS Trademarks are distinctive when applied to the CARE BEARS Products. The marks signify to consumers that the products come from Plaintiff and are manufactured to the highest quality standards. Thus, the fifth factor, the strength of the marks, also weighs heavily in favor of Plaintiff.

As for the sixth factor, Plaintiff does not need to prove likelihood of confusion with evidence of actual confusion; instead, it merely needs to show *some* evidence of potential confusion. *See Libman Co. v. Vining Indus., Inc.*, 69 F.3d 1360, 1363 (7th Cir.1995); *see also Sands, Taylor & Wood Co. v. Quaker Oats Co.*, 978 F.2d 947, 960 (7th Cir. 1992) (the Seventh Circuit has consistently found that "plaintiff need not show actual confusion in order to establish likelihood of confusion."). In this case, actual confusion can be inferred because Defendants are selling counterfeit CARE BEARS Products in connection with the CARE BEARS Trademarks. Because the goods are similar and have identical and similar uses, consumers will be confused and think that Defendants' products are genuine CARE BEARS Products or are sponsored or endorsed by Plaintiff. This factor weighs in favor of Plaintiff.

Regarding the seventh and final factor, Defendants are intentionally using the CARE BEARS Trademarks to confuse and deceive the consuming public into thinking that Defendants' Counterfeit CARE BEARS Products are manufactured by or emanate from Plaintiff. Defendants are purposefully attempting to benefit and trade off Plaintiff's goodwill and reputation. Therefore, the final factor regarding Defendants' intent also weighs heavily in Plaintiff's favor.

In sum, each of the seven likelihood of confusion factors weighs heavily in favor of Plaintiff, and, therefore, Plaintiff has proved that it has a reasonable likelihood of success on the merits for its trademark infringement and counterfeiting claim.

## ii. Plaintiff Is Likely to Succeed on Its False Designation of Origin Claim

Plaintiff is bringing a false designation of origin claim under 15 U.S.C. § 1125(a) must show that: (1) the plaintiff has a protectable trademark; and (2) a likelihood of confusion will exist as to the origin of plaintiff's products. *All Star Championship Racing, Inc. v. O'Reilly Auto. Stores, Inc.,* 2013 WL 1701871, *10 (C.D. Ill. Apr. 18, 2013) (*citing Johnny Blastoff, Inc. v. Los Angeles Rams Football Co.,* 188 F. 3d 427, 436 (7th Cir. 1999)). This is the same test that is used for determining whether trademark infringement has occurred under the Lanham Act. *See Neopost*, 403 F. Supp. 2d at 684. Because the CARE BEARS Trademarks are registered marks, and Plaintiff has established a likelihood of success on the merits of its trademark infringement and counterfeiting claim against Defendants (supra), a likelihood of success on the merits for Plaintiff's false designation of origin claim is also established.

## iii. Plaintiff Is Likely to Succeed on Its Copyright Infringement Claim

To establish copyright infringement under 17 U.S.C. § 501, a plaintiff must prove two elements: (1) ownership of a valid copyright, and (2) copying of constituent elements of the work that are original. *JCW Investments, Inc. v. Novelty, Inc.,* 482 F.3d 910, 914 (7th Cir. 2007). Moreover, copyright protection extends to works derived from the original work since Section 101 of the Copyright Act defines a "derivative work" as "a work based upon one or more preexisting works, such as a translation, musical arrangement, dramatization, fictionalization…, or any other form in which a work may be recast, transformed, or adapted." 17 U.S.C. § 101. Lastly, "when cartoons or movies are copyrighted, a component of that copyright protection

18

extends to the characters themselves, to the extent that such characters are sufficiently distinctive. *Warner Bros. Entm't, Inc. v. X One X Prods.*, 644 F.3d 584, 597 (8th Cir. 2011).

Here, Plaintiff is the owner of the registered copyright in CARE BEARS. Gorman Decl. at ¶ 5. The accused products are derived from the distinctive creative content found from the CARE BEARS characters. Therefore, the infringement is clear and establishes that Plaintiff is likely to succeed on the merits of his claim.

iv.  <u>Plaintiff Is Likely to Succeed on Its Illinois Uniform Deceptive Trade Practices Act Claim</u>

In Illinois, courts resolve unfair competition and deceptive trade practice claims "according to the principles set forth under the Lanham Act." *Spex, Inc. v. Joy of Spex, Inc.*, 847 F. Supp. 567, 579 (N.D. Ill. 1994). Illinois courts look to federal case law and apply the same analysis to state infringement claims. *Id.* at 579 (citation omitted). The determination as to whether there is a likelihood of confusion is similar under both the Lanham Act and the Illinois Uniform Deceptive Trade Practices Act. *Am. Broad. Co. v. Maljack Prods., Inc.*, 34 F. Supp. 2d 665, 681 (N.D. Ill. 1998). Because Plaintiff has established a likelihood of success on the merits of its trademark infringement, copyright infringement and counterfeiting claims against Defendants (supra), and the standard is the same under Illinois law, Plaintiff has established a likelihood of success on the merits for its Illinois Uniform Deceptive Trade Practices Act claim.

**D.  There Is No Adequate Remedy at Law and Plaintiff Will Suffer Irreparable Harm in the Absence of Preliminary Relief**

The Seventh Circuit has "clearly and repeatedly held that damage to a trademark holder's goodwill can constitute irreparable injury for which the trademark owner has no adequate legal remedy." *Re/Max N. Cent., Inc. v. Cook,* 272 F.3d 424, 432 (7th Cir. 2001) (citing *Eli Lilly & Co. v. Natural Answers, Inc.,* 233 F.3d 456, 469 (7th Cir. 2000)); *Meridian Mut. Ins. Co. v. Meridian Ins. Group, Inc.,* 128 F.3d 1111, 1114 (7th Cir. 1997); *Wesley–Jessen Division of Schering Corp.*

*v. Bausch & Lomb Inc.*, 698 F.2d 862, 867 (7th Cir.1983). Irreparable injury "almost inevitably follows" when there is a high probability of confusion because such injury "may not be fully compensable in damages." *Helene Curtis Industries, Inc. v. Church & Dwight Co., Inc.*, 560 F.2d 1325, 1332 (7th Cir. 1977) (citation omitted). "The most corrosive and irreparable harm attributable to trademark infringement is the inability of the victim to control the nature and quality of the defendants' goods." *Int'l Kennel Club of Chicago, Inc. v. Mighty Star, Inc.,* 846 F.2d 1079, 1092 (7th Cir. 1988); *see also 4 Callmann on Unfair Competition, Trademark and Monopolies* § 88.3(b) at 205 (3d ed. 1970). As such, monetary damages are likely to be inadequate compensation for such harm. *Ideal Indus., Inc. v. Gardner Bender, Inc.,* 612 F.2d 1018, 1026 (7th Cir. 1979).

The harms caused by the copyright infringement of CARE BEARS is equally damaging. The infringement deprives Plaintiff of the ability to control the creative content protected by the copyright, it devalues the CARE BEARS brand by associating it with inferior quality goods and it undermines the value of the copyright by creating the impression that infringement may be undertaken with impunity which threatens Plaintiff's ability to develop additional markets for his products. Gorman Decl. ¶¶ 22, 23. These are recognized irreparable harms for which monetary compensation is inadequate. *See MGM Studios, Inc. v. Grokster, Ltd.,* 518 F.Supp. 2d 1197, 1219 (C.D. Cal. 2007).

Defendants' unauthorized use of the CARE BEARS Trademarks and Copyright has and continues to irreparably harm Plaintiff through diminished goodwill and brand confidence, damage to Plaintiff's reputation, loss of exclusivity, and loss of future sales. Gorman Declaration at ¶¶ 21-23.

The extent of the harm to Plaintiff's reputation and goodwill and the possible diversion of customers due to loss in brand confidence are both irreparable and incalculable, thus warranting an immediate halt to Defendants' infringing activities through injunctive relief. *See Promatek Industries, Ltd. v. Equitrac Corp.,* 300 F.3d 808, 813 (7th Cir. 2002) (Finding that damage to plaintiff's goodwill was irreparable harm for which plaintiff had no adequate remedy at law); *Gateway Eastern Railway Co. v. Terminal Railroad Assoc. of St. Louis,* 35 F.3d 1134, 1140 (7th Cir. 1994) ("[S]howing injury to goodwill can constitute irreparable harm that is not compensable by an award of money damages."). Plaintiff will suffer immediate and irreparable injury, loss, or damage if an *ex parte* Temporary Restraining Order is not issued in accordance with Federal Rule of Civil Procedure 65(b)(1). Gorman Declaration at ¶¶24, 25. As such, Plaintiff should be granted preliminary relief.

### E.  The Balancing of Harms Tips in Plaintiff's Favor

As noted above, if the Court is satisfied that Plaintiff has demonstrated (1) a likelihood of success on the merits, (2) no adequate remedy at law, and (3) the threat of irreparable harm if preliminary relief is not granted, then it must next consider the harm that Defendants will suffer if preliminary relief is granted, balancing such harm against the irreparable harm Plaintiff will suffer if relief is denied. *Ty, Inc.*, 237 F.3d at 895.

As willful infringers, Defendants are entitled to little equitable consideration. "When considering the balance of hardships between the parties in infringement cases, courts generally favor the trademark owner." *Krause Int'l Inc. v. Reed Elsevier, Inc.*, 866 F. Supp. 585, 587-88 (D.D.C. 1994). This is because "[o]ne who adopts the marks of another for similar goods acts at his own peril since he has no claim to the profits or advantages thereby derived." *Burger King Corp. v. Majeed,* 805 F. Supp. 994, 1006 (S.D. Fla. 1992) (internal quotation marks omitted). Therefore, the balance of harms "cannot favor a defendant whose injury results from the

knowing infringement of the plaintiff's trademark." *Malarkey-Taylor Assocs., Inc. v. Cellular Telecomms. Indus. Ass'n,* 929 F. Supp. 473, 478 (D.D.C. 1996).

As Plaintiff has demonstrated, Defendants have been profiting from the sale of Counterfeit CARE BEARS Products. Thus, the balance of equities tips decisively in Plaintiff's favor. As such, equity requires that Defendants be ordered to cease their unlawful conduct.

### F. Issuance of the Injunction Is in the Public Interest

An injunction in these circumstances is in the public interest because it will prevent consumer confusion and stop Defendants from violating federal trademark and copyright law. The public is currently under the false impression that Defendants are operating their Defendants Internet Stores with Plaintiff's approval and endorsement. An injunction serves the public interest in this case "because enforcement of the trademark laws prevents consumer confusion." *Eli Lilly*, 233 F.3d at 469.

Federal courts have long held that "the trademark laws ... are concerned not alone with the protection of a property right existing in an individual, but also with the protection of the public from fraud and deceit." *Stahly, Inc. v. M.H. Jacobs Co.,* 183 F.2d 914, 917 (7th Cir. 1950) (citations omitted). The public interest is further served by protecting "the synonymous right of a trademark owner to control his product's reputation." *James Burrough Ltd. v. Sign of the Beefeater, Inc.*, 540 F.2d 266, 274 (7th Cir. 1976); *see also Shashi, Inc. v. Ramada Worldwide, Inc.,* No. 7:05-cv-00016-JGW-mfu, 2005 WL 552593, *4 (W.D. Va. Mar. 1, 2005) ("It is in the best interest of the public for the court to defend the integrity of the intellectual property system and to prevent consumer confusion"). "[I]t is virtually axiomatic that the public interest can only be served by upholding copyright protections and correspondingly, preventing the misappropriation of skills, creative energies, and resources which are invested in the protected work." *Apple Computer, Inc. v. Franklin Computer Corp.,* 714 F.2d 1240, 1255 (3rd Cir. 1983).

In this case, the injury to the public is significant, and the injunctive relief that Plaintiff seeks is specifically intended to remedy that injury by dispelling the public confusion created by Defendants' actions. The public has the right not to be confused and defrauded as to the source of the goods and services offered by Defendants, or as to the identity of the owner of trademarks and copyrights used in connection with those goods and services. Unless Defendants' unauthorized use of the CARE BEARS Trademarks and Copyrights are enjoined, the public will continue to be confused and misled by Defendants' conduct.

For these reasons, it is respectfully submitted that granting Plaintiff's Motion for Entry of a Temporary Restraining Order is in the public interest.

## IV.    THE EQUITABLE RELIEF SOUGHT IS APPROPRIATE

In addition to this Court's inherent authority to issue injunctive relief, the Lanham Act authorizes courts to issue injunctive relief "according to the principles of equity and upon such terms as the court may deem reasonable, to prevent the violation of any right of the registrant of a mark …." 15 U.S.C. § 1116(a). Furthermore, Rule 65(b) of the Federal Rules of Civil Procedure provides that a court may issue a temporary restraining order without notice where facts show that the movant will suffer immediate and irreparable injury, loss, or damage before the adverse party can be heard in opposition. Moreover, under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third parties, such as domain name registries and financial institutions, who are in active concert with the Defendants or who aid and abet Defendants and are given actual notice of the order. Fed. R. Civ. P. 65. The facts in this case warrant such relief.

**A. A Temporary Restraining Order Immediately Enjoining Defendants' Unauthorized and Unlawful Use of Plaintiff's Marks Is Appropriate**

Plaintiff requests a temporary injunction requiring the Defendants to immediately cease all use of the CARE BEARS Trademarks and Copyrights or substantially similar marks on or in connection with all Defendants Internet Stores. Such relief is necessary to stop the ongoing harm to the CARE BEARS Trademarks and Copyrights and associated goodwill, as well as harm to consumers, and to prevent the Defendants from continuing to benefit from their unauthorized use of the CARE BEARS Trademarks and Copyrights.

The need for *ex parte* relief is magnified in today's global economy where counterfeiters can operate over the Internet in an anonymous fashion. Plaintiff is currently unaware of both the true identities and locations of the Defendants, as well as other Defendant Internet Stores used to distribute Counterfeit CARE BEARS Products.

Many courts have authorized immediate injunctive relief in similar cases involving the unauthorized use of trademark and counterfeiting. *See, e.g. Michael Kors, L.L.C. v. The Partnerships and Unincorporated Associations Identified on Schedule "A"*, No. 13-cv-8612 (N.D. Ill. Dec. 5, 2013) (unpublished) (Order granting *Ex Parte* Motion for Temporary Restraining Order); *Calvin Klein Trademark Trust, et al. v. The Partnerships, et al.*, No. 13-cv-8186 (N.D. Ill. Nov. 19, 2013) (unpublished) (same); *Manolo Blahnik International Limited v. The Partnerships, et al.*, No. 13-cv-7810 (N.D. Ill. Nov. 12, 2013) (unpublished) (same); *NBA Properties, Inc., et al. v. The Partnerships, et al.*, No. 13-cv-7181 (N.D. Ill. Oct. 9, 2013) (unpublished) (same); *Beats Electronics, LLC v. The Partnerships, et al.,* No. 13-cv-6724 (N.D. Ill. Sept. 25, 2014) (unpublished) (same); *Lululemon Athletica Canada Inc. v. The Partnerships, et al.*, No. 13-cv-6297 (N.D. Ill. Sept. 10, 2013) (unpublished) (same); *Chrome Hearts LLC v. The Partnerships, et al.*, No. 13-cv-4784 (N.D. Ill. July 10, 2013) (unpublished) (same);

*Luxottica USA LLC v. The Partnerships, et al.*, No. 13-cv-4429 (N.D. Ill. June 20, 2013) (unpublished) (same); *Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) (same); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) (same); *Tory Burch LLC v. Zhong Feng, et al.,* No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) (same); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. June 6, 2012) (unpublished) (same); *Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) (same); *Tory Burch, LLC v. Yong Sheng Int'l Trade Co., Ltd.,* No. 1:10-cv-09336-DAB (S.D.N.Y. Jan. 4, 2011) (unpublished) (same)*;* (hereinafter, collectively referred to as the "*Counterfeit Website Cases*"); *see also, Ford Motor Co. v. Lapertosa,* 126 F. Supp. 2d 463 (E.D. Mich. 2001) (enjoining Defendant from "using in any way the Internet domain name 'fordrecalls.com'"); *Kraft Food Holdings, Inc. v. Helm,* 205 F. Supp. 2d 942, 956 (N.D. Ill. 2002) (granting preliminary injunction requiring defendant to "immediately" remove all references to versions of plaintiff's mark, including removing all references "from metatags, metanames or any other keywords on his websites").

### B. Transferring the Defendant Domain Names to Plaintiff's Control Is Appropriate

As a part of the Temporary Restraining Order, Plaintiff also seeks temporary transfer of the Defendants Domain Names to Plaintiff's control in order to disable the counterfeit websites and electronically publish notice of this case to Defendants. Defendants involved in domain name litigation easily can, and often will, change the ownership of a domain name or continue operating the website while the case is pending. Accordingly, to preserve the status quo and ensure the possibility of eventual effective relief, courts in trademark cases involving domain

names regularly grant the relief requested herein. *See, e.g., the Counterfeit Website Cases, supra* at p. 28; *see also Board of Directors of Sapphire Bay Condos. W. v. Simpson,* 129 F. App'x 711 (3d Cir. 2005) (affirming District Court's granting of the preliminary injunction ordering defendant to "cancel his registration of the domain name and refrain from using the name, or any derivative thereof, for any Web site under his ownership or substantial control"); *Chanel, Inc. v. Paley,* No. 3:09-cv-04979-MHP (N.D. Cal. Nov. 13, 2009) (unpublished) (granting temporary restraining order and disabling domain names at issue); *Philip Morris U.S.A., Inc. v. Otamedia Ltd.,* 331 F. Supp. 2d 228, 246 (S.D.N.Y. 2004) (granting order transferring ownership of Defendant's Internet domain names to Plaintiff); *Ford Motor Co.,* 126 F. Supp. 2d at 466 (granting Plaintiff's preliminary injunction because, among other things, "Defendant's misappropriation of the goodwill [Plaintiff] has developed in the mark by registering the [infringing] Internet domain name ... significantly tarnishes [Plaintiff's] reputation").

As such, Plaintiff respectfully requests that, as part of the Temporary Restraining Order, the Court require the relevant registries and/or registrars for the Defendants Domain Names to transfer the Defendants Domain Names to Plaintiff.

### C. Preventing the Fraudulent Transfer of Assets Is Appropriate

Plaintiff requests an *ex parte* restraint of Defendants' assets so that Plaintiff's right to an equitable accounting of Defendants' profits from sales of Counterfeit CARE BEARS Products is not impaired. Issuing an *ex parte* restraint will ensure Defendants' compliance. If such a restraint is not granted in this case, Defendants may disregard their responsibilities and fraudulently transfer financial assets to overseas accounts before a restraint is ordered. Specifically, upon information and belief, the Defendants in this case hold most of their assets in China, making it easy to hide or dispose of assets, which will render an accounting by Plaintiff meaningless.

Courts have the inherent authority to issue a prejudgment asset restraint when plaintiff's complaint seeks relief in equity. *Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992). In addition, Plaintiff has shown a strong likelihood of succeeding on the merits of its trademark infringement, copyright infringement and counterfeiting claims, so according to the Lanham Act 15 U.S.C. § 1117(a)(1), Plaintiff is entitled, "subject to the principles of equity, to recover ... defendant's profits." Plaintiff's Complaint seeks, among other relief, that Defendants account for and pay to Plaintiff all profits realized by Defendants by reason of Defendants' unlawful acts. Therefore, this Court has the inherent equitable authority to grant Plaintiff's request for a prejudgment asset freeze to preserve the relief sought by Plaintiff.

The Northern District of Illinois in *Lorillard Tobacco Co. v. Montrose Wholesale Candies* entered an asset restraining order in a trademark infringement case brought by a tobacco company against owners of a store selling counterfeit cigarettes. *Lorillard*, 2005 WL 3115892, at *13 (N.D. Ill. Nov. 8, 2005). The Court, citing *Grupo Mexicano de Desarollo, S.A. v. Aliance Bond Fund*, 527 U.S. 308 (1999), recognized that it was explicitly allowed to issue a restraint on assets for lawsuits seeking equitable relief. *Id.* (citing *Grupo Mexicano*, 527 U.S. at 325 (citing *Deckert v. Independence Shares Corp.*, 311 U.S. 282 (1940)). Because the tobacco company sought a disgorgement of the storeowner's profits, an equitable remedy, the Court found that it had the authority to freeze the storeowner's assets. *Id.; see also Animale Grp. Inc. v. Sunny's Perfume Inc.*, 256 F. App'x 707, 709 (5th Cir. 2007); *Levi Strauss & Co. v. Sunrise Int'l Trading Inc.*, 51 F.3d 982, 987 (11th Cir. 1995); *Reebok Int'l Ltd. v. Marnatech Enters., Inc.*, 970 F.2d 552, 559 (9th Cir. 1992); *CSC Holdings, Inc. v. Redisi*, 309 F.3d 988 (7th Cir. 2002) ("since the

assets in question ... were the profits of the [defendants] made by unlawfully stealing [the plaintiff's] services, the freeze was appropriate and may remain in place pending final disposition of this case."); *accord* 5 J. Thomas McCarthy, *McCarthy on Trademark and Unfair Competition* § 30:40 (4th ed. 2013). In addition, courts in this district and across the country regularly issue asset-restraining orders for entire financial accounts in cases involving the sale of counterfeit products. *See, e.g., the Counterfeit Website Cases, supra* at p. 28.

Plaintiff has shown a likelihood of success on the merits, an immediate and irreparable harm suffered as a result of Defendants' activities, and that, unless Defendants' assets are frozen, Defendants will likely hide or move their ill-gotten funds to offshore bank accounts. Accordingly, the granting of an injunction preventing the transfer of Defendants' assets is proper.

### D. Plaintiff Is Entitled to Expedited Discovery

The Supreme Court has held that "federal courts have the power to order, at their discretion, the discovery of facts necessary to ascertain their competency to entertain the merits." *Vance v. Rumsfeld*, No. 1:06-cv-06964, 2007 WL 4557812, *6 (N.D. Ill. Dec. 21, 2007) (quoting *Oppenheimer Fund, Inc. v. Sanders,* 437 U.S. 340, 351, 98 S. Ct. 2380 (1978)). A district court has wide latitude in determining whether to grant a party's request for discovery. *Id.* (citation omitted). Furthermore, courts have broad power over discovery and may permit discovery in order to aid in the identification of unknown defendants. *See* Fed. R. Civ. P. 26(b)(2); *Gillespie v. Civiletti*, 629 F.2d 637, 642 (9th Cir. 1980).

As described above, Defendants are using third-party payment processors such as Visa, and eBay, Etsy, Amazon, Walmart and Temu, which helps to increase their anonymity by interposing a third party between the consumer and Defendants. Without being able to discover

Defendants' bank and payment system accounts, any asset restraint would be of limited value because Plaintiff would not know the entities upon whom to serve the order.

Plaintiff respectfully requests expedited discovery to discover bank and payment system accounts Defendants use for their counterfeit sales operations. The discovery requested on an expedited basis in Plaintiff's Proposed Temporary Restraining Order has been limited to include only what is essential to prevent further irreparable harm. Discovery of these financial accounts so that they can be frozen is necessary to ensure that these activities will be contained.

Under Federal Rule of Civil Procedure 65(d)(2)(C), this Court has the power to bind any third party who is in active concert with the Defendants that is given notice of the order to provide expedited discovery in this action. Fed. R. Civ. P. 65(d)(2)(C). Plaintiff's counsel is aware that the same third parties, in previous lawsuits, have worked with trademark and copyright owners and is not aware of any reason that Defendants or third parties cannot comply with these expedited discovery requests without undue burden. Further, all relevant third parties have in fact complied with identical requests in previous similar cases. More importantly, as Defendants have engaged in many deceptive practices in hiding their identities and accounts, Plaintiff's seizure and asset restraint in the Temporary Restraining Order may have little meaningful effect without the requested relief. Accordingly, Plaintiff respectfully requests that expedited discovery be granted.

## V.     A BOND SHOULD SECURE THE INJUNCTIVE RELIEF

The posting of security upon issuance of a temporary restraining order or preliminary injunction is vested in the Court's sound discretion. *Rathmann Grp. v. Tanenbaum,* 889 F.2d 787, 789 (8th Cir. 1989); *Hoechst Diafoil Co. v. Nan Ya Plastics Corp.,* 174 F.3d 411, 421 (4th Cir. 1999); Fed. R. Civ. P. 65(c). Because of the strong and unequivocal nature of Plaintiff's

evidence of counterfeiting, infringement, and unfair competition, Plaintiff respectfully requests that this Court require Plaintiff to post a bond of no more than Ten Thousand U.S. Dollars ($10,000.00). *See, e.g., Oakley, Inc. v. Does 1-100,* No. 12-cv-9864 (N.D. Ill. Dec. 14, 2012) (unpublished) ($10,000 bond); *True Religion Apparel, Inc. v. Does 1-100,* No. 12-cv-9894 (N.D. Ill. Dec. 20, 2012) (unpublished) ($10,000 bond); *Tory Burch LLC v. Zhong Feng, et al.*, No. 1:12-cv-09066 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Coach, Inc., et al. v. Does 1-100,* No. 1:12-cv-8963 (N.D. Ill. Nov. 15, 2012) (unpublished) ($10,000 bond); *Deckers Outdoor Corp. v. Does 1-1,281,* No. 1:12-cv-01973 (N.D. Ill. Apr. 4, 2012) (unpublished) ($10,000 bond)*; Abercrombie & Fitch Trading Co. v. 4cheapbags.com,* No. 1:12-cv-21088 (S. D. Fla. June 6, 2012) (unpublished) ($10,000 bond).

## VI.    CONCLUSION

Plaintiff's business, its CARE BEARS brand, and consumers are being irreparably harmed. Without entry of the requested relief, the sale of Counterfeit CARE BEARS Products will continue to lead prospective purchasers and others to believe that Defendants' products have been manufactured by or emanate from Plaintiff. Therefore, entry of an *ex parte* order is necessary to protect Plaintiff's copyright and trademark rights, to prevent further harm to Plaintiff and the consuming public, and to preserve the status quo. In view of the foregoing and consistent with previous similar cases, Plaintiff respectfully requests that this Court enter a Temporary Restraining Order in the form submitted herewith and set a status hearing before the expiration of the Temporary Restraining Order at which hearing Plaintiff intends to present a motion for preliminary injunction.

Respectfully submitted,

Dated:  October 17, 2023

By:   s/Michael A. Hierl                        
       Michael A. Hierl (Bar No. 3128021)
       William B. Kalbac (Bar No. 6301771)
       Robert P. McMurray (Bar No. 6324332)
       Hughes Socol Piers Resnick & Dym, Ltd.
       Three First National Plaza
       70 W. Madison Street, Suite 4000
       Chicago, Illinois 60602
       (312) 580-0100 Telephone
       mhierl@hsplegal.com

       Attorneys for Plaintiff
       Those Characters from Cleveland, LLC

**CERTIFICATE OF SERVICE**

The undersigned attorney hereby certifies that a true and correct copy of the foregoing Memorandum was filed electronically with the Clerk of the Court and served on all counsel of record and interested parties via the CM/ECF system on October 17, 2023.

s/Michael A. Hierl